**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| ABIGAIL RATCHFORD, ANA CHERI MORELAND, DESSIE MITCHESON, JESSICA HINTON A/K/A JESSA HINTON, TIFFANY TOTH GRAY, and IRINA VORONINA,<br><br>Plaintiffs,<br><br>- against -<br><br>ASPL CAFÉ, INC. d/b/a RIVIERA GENTLEMEN'S CLUB, and GEORGE DORIZAS,<br><br>Defendants. | Case No. _____<br><br><br><br><br><br>**COMPLAINT**<br><br>(Jury Trial Demanded) |

Plaintiffs ABIGAIL RATCHFORD, ANA CHERI MORELAND, DESSIE

MITCHESON, JESSICA HINTON A/K/A JESSA HINTON, TIFFANY TOTH GRAY, AND

IRINA VORONINA (collectively, "Plaintiffs"), by and through their undersigned counsel, as

and for their Complaint ("Complaint") against defendants ASPL CAFÉ, INC. d/b/a RIVIERA

GENTLEMEN'S CLUB, and GEORGE DORIZAS (collectively "Defendants"), respectfully

allege as follows:

**BACKGROUND**

1.      This is an action for damages and injunctive relief relating to Defendants'

misappropriation, alteration, and unauthorized publication of sexually suggestive images of

Plaintiffs, each of whom are world renowned professional models, to promote their strip club,

Riviera Gentlemen's Club ("Riviera's"), in Long Island City, New York.

2.      As detailed below, Defendants' misappropriation and unauthorized use of

Plaintiffs' images, photos and likenesses (collectively, "Images") constitutes, at minimum: a)

- 1 -

violation of section 43 of the Lanham Act, 15 U.S.C. § 1125(a), which prohibits both false

advertising and false or misleading use of a person's image for purposes of advertising; b)

violation of New York Civil Rights Law §§ 50-51, which protects a person's right to privacy and

publicity; c) violation of New York's Deceptive Trade Practices Act (New York G.B.L. §349)

which prohibits deceptive business practices; and, d) defamation.

3.     In addition to the actual, punitive and exemplary damages set forth below,

Plaintiffs likewise seek an Order from this Court permanently enjoining Defendants from using

their Images to promote any Club, via any medium.

## JURISDICTION & VENUE

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because

Plaintiffs have stated claims under, *inter alia*, the Lanham Act, 28 U.S.C. § 1125(a), and

jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

5.     As set forth immediately below, Plaintiffs are, and at all times relevant to this

action have been, professional models who reside throughout the United States.

6.     According to publicly available records, defendant ASPL CAFÉ, INC. ("ASPL

CAFÉ") is a corporation formed under the laws of the state of New York, with its principal place

of business located at 3448 Steinway St., Long Island City, Queens, New York.

7.     Upon information and belief, defendant GEORGE DORIZAS ("Owner") is a

resident of the State of New York, and at all relevant times is the owner, principal and/or chief

executive officer of ASPL CAFÉ, INC.

8.     Venue is proper in the United States District Court for the Eastern District of New

York because Queens County is Defendants' principal place of business.

9.     All parties have minimum contacts with Queens County, a significant portion of

the alleged causes of action arose and accrued in Queens County, and the center of gravity for a significant portion of all relevant events alleged in this complaint is predominately located in Queens County.

## PARTIES

*Plaintiffs*

10.     Plaintiff Abigail Ratchford ("Ratchford") is a well-known professional model, and a resident of Los Angeles County, California.

11.     Plaintiff Ana Cheri Moreland ("Moreland") is a well-known professional model, and a resident of Orange County, California.

12.     Plaintiff Dessie Mitcheson ("Mitcheson") is a well-known professional model, and a resident of Orange County, California.

13.     Plaintiff Jessica Hinton a/k/a Jessa Hinton ("Hinton") is a well-known professional model, and a resident of Los Angeles County, California.

14.     Plaintiff Tiffany Toth Gray ("Gray") is a well-known professional model, and a resident of Orange County, California.

15.     Plaintiff Irina Voronina ("Voronina") is a well-known professional model, and a resident of Los Angeles County, California.

*Defendants*

16.     According to publicly available records, defendant ASPL CAFÉ is formed under the laws of the state of New York.  During times relevant to this action, ASPL CAFÉ, INC operated Riviera Gentlemen's Club, a strip club located at 3448 Steinway St., Long Island City, New York.

17.     Upon information and belief, the Owner, in his capacity as Owner of ASPL

CAFÉ maintains operational control over Riviera's including all advertising relating thereto and did so during all times relevant to the allegations herein.

## FACTUAL ALLEGATIONS

18.     As set forth immediately below, each Plaintiff is an extremely well-known professional model who earns her livelihood modeling and selling her Images to companies, magazines and individuals for the purpose of advertising products and services.

19.     Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical in order to maximize their earning potential, book modeling contracts, and establish each of their individual brands.  In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they model.

20.     Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by one or more of the Defendants in order to make it appear that they worked at or endorsed Riviera's.

21.     In the case of each and every Plaintiff, such appearance was false.

22.     Moreover, in each and every case, this misappropriation occurred without any of the Plaintiffs' knowledge, consent or authorization, at no point did any Plaintiff ever receive any remuneration for Defendants' improper and illegal use of their Images, and Defendants' improper and illegal use of Plaintiffs' Images have caused each Plaintiff to suffer substantial damages.

### *Plaintiffs' Backgrounds and Careers*

23.     Ratchford is, and at all times relevant to this action was, a professional model and actress, whose deft use of social media, combined with the use of provocative pictures helped land her on numerous men's websites, a six-page print spread in a popular Australian men's

- 4 -

magazine, and also led to her being selected to audition for parts in *Maxim*, a feature film, and television shows found on ABC and E! Networks. She has over 8.7 million followers on Instagram, 4.2 million followers of Facebook, and over 672,300 followers on Twitter.[1]

24.     That we know of, Ratchford is depicted in the photo in Exhibit "A" to promote Riviera's on its Instagram page.  This Image was intentionally altered to make it appear that Ratchford was either a stripper working at Riviera's, or that she endorsed the Club.

25.     Ratchford has never been employed at Riviera's, has never been hired to endorse Riviera's, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

26.     Moreland is, and at all times relevant to this action was, a model. Moreland is a published model who has worked with companies such as Monster Energy, K&N Filters, Moskova Underware and Ultimate Armwrestling League. She became a brand ambassador for Shredz, was featured as a *Maxim* Instagram Girl of the Week. She is also *Playboy's* Playmate of the Month (October 2015). Ana has 11.7 million followers on Instagram, 218.4K followers on Twitter, and over 6.3 million followers on Facebook.

27.     That we know of, Moreland is depicted in the photos in Exhibit "B" to promote Riviera's on its Instagram and Facebook page.  These Images were intentionally altered to make it appear that Moreland was either a stripper working at Riviera's, or that she endorsed the Club.

28.     Moreland has never been employed at Riviera's, has never been hired to endorse Riviera's, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

---

[1] In the world of modeling, the number of online "followers" or "likes" is a strong factor in determining the earning capacity of a model.

29.     Mitcheson is, and at all times relevant to this action was, a professional model, and actress. Mitcheson competed in Miss Pennsylvania USA at age 18 and placed in the Top 10. Mitcheson soon became the face of Playboy Intimates, and then became the face of MGM Grand Las Vegas and Miss Pennsylvania Intercontinental. Mitcheson was also named *Maxim* magazine's "Hometown Hottie". That same year, Mitcheson was #100 on *Maxim's* Hot 100 List. Mitcheson has graced the pages of multiple issues of *Maxim*, including a three page spread, two center folds, and landed the cover for the May 2014 *Navy* issue. Mitcheson was featured as the main Tecate Beer ring girl in the biggest Pay-Per-View event in history, the Mayweather v. Pacquiao fight, which gave her the worldwide visibility with over 100 million viewers. This triggered a huge demand for her services and increased her daily quote substantially. Mitcheson has also been featured by national advertisers such as Crest toothpaste, Tecate, Roma Costumes, and J. Valentine. Mitcheson was also the face of an International video game.

30.     That we know of, Mitcheson is depicted in the photos in Exhibit "C" to promote Riviera's on its Instagram page.  These Images were intentionally altered in order to make it appear that Mitcheson is either a stripper working at Riviera's, or that she endorsed the Club.

31.     Mitcheson has never been employed at Riviera's, has never been hired to endorse Riviera's, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

32.     Hinton is, and at all times relevant to this action was, a model, actress, and host. Hinton was first introduced to the entertainment industry at age 14 when she was discovered by a talent manager at a wedding. She immediately booked three national TV commercials and guest appeared on *Baywatch* and *7ᵗʰ Heaven* by the age of 16. At the age of 18, Hinton began working runway shows and doing print campaigns. In 2010, she became the face of the Palm's Hotel and

Casino's 2010 ad campaign. Hinton then expanded to TV personality roles having hosted for *Victory Poker*, and as an interview personality for the *Top Ranking Boxing* interviewing the likes of Manny Pacquiao and Shane Mosley. In 2011, Hinton was selected as the *Playboy* Playmate of the Month for July 2011, becoming one of the most popular Playmates of that year. Hinton then became the centerpiece of an advertisement campaign for Milwaukee's Best Beer in conjunction with *Playboy* Enterprises.

33.     That we know of, Hinton is depicted in the photos in Exhibit "D" to promote Riviera's on its Instagram page.  These Images were intentionally altered in order to make it appear that Hinton is either a stripper working at Riviera's, or that she endorsed the Club.

34.     Hinton has never been employed at Riviera's, has never been hired to endorse Riviera's, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

35.     Gray is, and at all times relevant to this action was, a model. Gray takes great pride in holding the prestigious title of a *Playboy* Playmate. Gray was the *Playboy* "Cyber Girl of the Month" for May 2006. She then went on to pose for three pictorials under *Playboy's* Fresh Faces. Moreover, she has not only been featured in such magazines as *Super Street Bike*, *Import Tuner, Sport Truck, Iron Man, Seventeen*, and *Maxim*, but has also posed for various catalogs. Gray has over 3.8 million Facebook followers, over 1.3 million Instagram followers, and over 226,00 Twitter followers.

36.     That we know of, Gray is depicted in the photos in Exhibit "E" to promote Riviera's on its Instagram page. These Images were intentionally altered to make it appear that Gray was either a stripper at Riviera's, or that she endorsed the Club.

37.     Gray has never been employed at Riviera's, has never been hired to endorse

Riviera's has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

38.     Voronina is, and at all times relevant to this action was, an international model and actress. After becoming *Playboy's* Miss January 2001, she represented international brands including SKYY Vodka, Miller Lite, Michelob Ultra, Bacardi, and Sisley & Detour to name a few. She has millions of visual impressions around the globe via the covers and pages of worldwide magazines such as *FHM, Maxim, Playboy* (in 20 countries), *Max* (Italy), *Ocean, Shape, 944, Knockout, Q* (UK), *People* (Australia), and most recently *Kandy, Rukus, Vape* and *Browz* magazines. In 2008, Voronina was named St. Pauli Girl spokes model and completed a 12-month PR tour across America. She became the first ever St. Pauli Girl to ring the NYSE closing bell representing Constellation Brands.  In 2013, Voronina was named *Kandy Magazine'*s Model of the Year as a result of her fans downloading the highest number of digital issues that year. She loves connecting with her fans and stays active daily across all social media outlets for her 4+ million followers on Facebook, Instagram, Twitter and YouTube. (Facebook - 3.6 million, Instagram 705K, Twitter 152.4K) Voronina also got her first big screen break in "Reno 911!: The movie.". Her credits include a series regular role in the fully improvised sitcom "Svetlana" for HD Net, the first ever live action show on Adult Swim Network "Saul of the Mole Men," guest star appearance on Nickelodeon's "iCarly," Comedy Central's "Reno 911!", and feature film parts in "Balls of Fury," &"Piranha 3DD," to name a few. In 2016, Voronina returned to the big screen playing supporting roles in "Laser Team" and "Killing Hasselhoff." She starred in the indie action flick "Scramble" which she also co-produced.

39.     That we know of, Voronina is depicted in the photos in Exhibit "F" to promote Riviera's on its Instagram and Facebook page.  These Images were intentionally altered to make

it appear that Voronina was either a stripper working at Riviera's, or that she endorsed the Club.

40.     Voronina has never been employed at Riviera's, has never been hired to endorse any Riviera's, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

*Defendants' Business*

41.     Upon information and belief, ASPL CAFÉ has operated, during the relevant time period, Riviera's, where it engages or has engaged in the business of selling alcohol and food in an atmosphere were nude and/or semi-nude women entertain the business' clientele.

42.     Upon information and belief, and in furtherance of its promotion of Riviera's, ASPL CAFÉ owns, operates and controls Riviera's social media accounts, including Riviera's Facebook, Twitter, and Instagram accounts.

43.     ASPL CAFÉ used Riviera's Facebook, Twitter, and Instagram accounts to promote Riviera's, and to attract patrons thereto.

44.     ASPL CAFÉ did this for its own commercial and financial benefit.

45.     ASPL CAFÉ has used, advertised, created, printed and distributed the Images of Plaintiffs, as further described and identified above, in order to create the false impression with potential clientele that each Plaintiff either worked as a stripper at Riviera's or endorsed Riviera's.

46.     ASPL CAFÉ used Plaintiffs' Images and created the false impression that they worked at or endorsed Riviera's to receive certain benefits therefrom, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; as well as an increase in business revenue, profits, proceeds, and income.

47.     As ASPL CAFÉ was at all times aware, at no point has any of the above named Plaintiffs ever been affiliated with or employed by Riviera's and at no point have any of the Plaintiffs ever endorsed Riviera's.

48.     All of ASPL CAFÉ's activities, including its theft of Plaintiffs' Images, and publication of same, were done without the knowledge or consent of Plaintiffs, and ASPL CAFÉ did not compensate Plaintiffs for its use of their Images.

49.     As such, Plaintiffs have never received any benefit for ASPL CAFÉ's use of their Images.

***Standard Business Practices in the Modeling Industry***

50.     It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

51.     The fee that a professional model, such as each of the Plaintiffs, will receive is negotiated by her agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) the location where the photo shoot takes place, and the length thereof; c) where and how the images are going to be used by the client (*e.g.*, company website, social media, television commercials, billboards or posters), known as "usage"; and, d) the length of time (known as the "term") the rights to use the photos will be assigned.  Most licenses to use a model's image are for 1, 2, or 3 year terms; but almost never is there a "lifetime" term.

***Defendants' Theft of Plaintiffs' Images***

52.     As detailed above, Defendants knowingly, and without the prior consent of any of the Plaintiffs, invaded Plaintiffs' privacy by using Plaintiffs' Images for commercial purposes in order to promote Riviera's by and through various marketing and promotional mediums including,

without limitation, Riviera's website, Twitter, Facebook, and Instagram.

53.     Defendants showcased Plaintiffs' Images on Riviera's social media pages to create the false impression that Plaintiffs worked at Riviera's or endorsed same.

54.     Defendants showcased Plaintiffs' Images on Riviera's social media pages to create the false impression that Plaintiffs were the "product" that Riviera's was offering the public.

55.     Defendants did so to attract clientele to Riviera's, promote Riviera's, and thereby generate revenue for Defendants.

56.     Defendants were aware that, by using Plaintiffs' Images, they were violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at and/or endorsed Riviera's.

57.     Plaintiffs allege that any improper or unauthorized use of their Images substantially injures their careers.

58.     This is especially so insofar as each of Plaintiffs' Images have been associated with a strip club, and the implication of Defendants' use of Plaintiffs' Images is that they are strippers.

59.     At no point were any of the Plaintiffs ever affiliated with Riviera's, or Defendants.

60.     Each of Plaintiffs' Images was used without her consent.

61.     At no point was any Plaintiff ever contacted by any Defendant, or any representative of any of the Defendants, to request the use of any of Plaintiffs' Images.

62.     No Defendant ever obtained, either directly or indirectly, permission to use any of Plaintiffs' Images.

63.     No Defendant ever paid any Plaintiff for its use of her Images on any promotional

materials, including Riviera's website, Twitter, Facebook, or Instagram accounts.

64. Defendants used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her Images.

65. Upon information and belief, Defendants have taken the foregoing actions with the intent of causing irreparable harm to each of the Plaintiffs.

**FIRST CAUSE OF ACTION**
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125 *et seq*.:**
**False Endorsement)**

66. Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

67. The provisions of the Lanham Act, 215 U.S.C. §1125, *et seq*. apply to Defendants, and protect Plaintiffs from the conduct described herein.

68. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from making any false or misleading representation of fact or false designation of origins which "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person…." 15 U.S.C. §1125(a)(1)(A).

69. Defendants used Plaintiffs image, likeness and/or identity as described herein without authority in order to create the perception that Plaintiffs worked at or were otherwise affiliated with Riviera, endorsed Defendant's businesses and activities, and/or consented to or authorized Defendant to use her image in order to advertise, promote, and market Defendants' businesses, Riviera, and/or Riviera's events and activities.

70. Defendants' use of Plaintiffs' image, likeness and/or identity to advertise,

promote and market Defendant's business and activities as described in this Complaint was false

and misleading and likely to cause consumer confusion.

71.     Defendants' unauthorized use of Plaintiffs image, likeness and/or identity as

described in this Complaint constitutes false endorsement by suggesting or implying, among

other things, that Plaintiffs worked at or were otherwise affiliated with Riviera and/or endorsed

Defendants' business, events or activities, or consented to or authorized Defendants' usage of her

image in order to advertise, promote, and market Defendant's business, events and activities

and/or that Plaintiffs would participate in or appear at the specific events promoted in the

advertisements.

72.     Defendants' false advertising described above has the capacity or tendency to

confuse consumers, including actual and prospective patrons of Riviera, as to the general quality

of attendees and participants of Riviera and in their events, as well as specifically whether

Plaintiffs worked at or were otherwise affiliated with Riviera, endorsed Defendants' business,

events or activities, or consented to or authorized Defendants' usage of her image in order to

advertise, promote, and market Defendants' businesses or Riviera's events and activities.

73.     Upon information and belief, Defendants' false advertising described above did,

in fact, deceive and/or cause consumer confusion as to whether Plaintiffs' worked at or were

otherwise affiliated with Riviera, endorsed Defendants' business, events and activities, or

consented to or authorized Defendants' usage of her image in order to advertise, promote, and

market Defendants' business or Riviera's events and activities.  Among other things, upon

information and belief, such unauthorized use misled and served to entice consumers and

prospective consumers to attend Riviera and participate in events at Riviera and had a material

effect and impact on the decision of members and prospective members and participants to visit

Riviera and take part in the events at Riviera.

74.     Defendants' advertisements, promotions and marketing of Riviera and events at Riviera occur in and are targeted to interstate commerce. Specifically, Defendants promote their businesses and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendants principally use the World Wide Web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure attendance at Riviera.

75.     Defendants' unauthorized use of Plaintiffs' image, likeness and/or identity as described herein was designed to benefit Defendants' businesses interests by, among other things, promoting Riviera and its activities and attracting clientele to Riviera.

76.     Defendants knew or should have known that their unauthorized use of Plaintiffs' image, likeness and/or identity would cause consumer confusion as described in this Complaint.

77.     Defendants' unauthorized use of Plaintiffs' image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

78.     Defendants' wrongful conduct as described herein was willful.

79.     As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

80.     Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Plaintiffs of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Plaintiffs.

81.     The method and manner in which Defendants used the images of Plaintiffs further evinces that Defendant were aware of or consciously disregarded the fact that Plaintiffs did not

- 14 -

consent to Defendants' use of the image to advertise Defendants businesses.

82.     Defendants have caused irreparable harm to Plaintiffs, their reputation and brand by attributing to Plaintiffs the strip club lifestyle and activities at Riviera.

83.     Defendants' unauthorized use of Plaintiffs' image, likeness and/or identity directly and proximately caused and continue to cause damage to Plaintiffs in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### (Violation of §43 of the Lanham Act, 15 U.S.C. §1125 *et seq*.: False Advertising)

84.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

85.     The provisions of the Lanham Act, 215 U.S.C. §1125, *et seq*. apply to Defendants, and protect Plaintiffs from the conduct described herein.

86.     Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . .".  15 U.S.C. §1125(a)(1)(B).

87.     Defendants used Plaintiffs image, likeness and/or identity as described herein without authority in order to create the perception that Plaintiffs worked at or were otherwise affiliated with Riviera, endorsed Defendant's businesses and activities, and/or consented to or authorized Defendant to use her image in order to advertise, promote, and market Defendants' businesses, Riviera, and/or Riviera's events and activities.

88.     Defendants' use of Plaintiffs' image, likeness and/or identity to advertise, promote and market Defendant's business and activities as described in this Complaint was false and misleading.

- 15 -

89.     Defendants' unauthorized use of Plaintiffs image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Plaintiffs worked at or were otherwise affiliated with Riviera, endorsed Defendants' business, events or activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendant's business, events and activities and/or that Plaintiffs would participate in or appear at the specific events promoted in the advertisements.

90.     Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Riviera, as to the general quality of attendees and participants of Riviera and in their events, as well as specifically whether Plaintiffs worked at or were otherwise affiliated with Riviera, endorsed Defendant's business, events or activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Riviera's events and activities.

91.     Upon information and belief, Defendant's false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Plaintiffs' worked at or were otherwise affiliated with Riviera, endorsed Defendant's business, events and activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Riviera's events and activities.  Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to attend Riviera and participate in events at Riviera and had a material effect and impact on the decision of members and prospective members and participants to visit Riviera and take part in the events at Riviera.

92.     Defendants' advertisements, promotions and marketing of Riviera and events at Riviera occur in and are targeted to interstate commerce. Specifically, Defendants promote their

businesses and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendants principally use the World Wide Web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure attendance at Riviera.

93. Defendants' unauthorized use of Plaintiffs' image, likeness and/or identity as described herein was designed to benefit Defendants' businesses interests by, among other things, promoting Riviera and its activities and attracting clientele to Riviera.

94. Defendants knew or should have known that their unauthorized use of Plaintiffs' image, likeness and/or identity would cause consumer confusion as described in this Complaint.

95. Defendants' unauthorized use of Plaintiffs' image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

96. Defendants' wrongful conduct as described herein was willful.

97. As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

98. Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Plaintiffs of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Plaintiffs.

99. The method and manner in which Defendants used the images of Plaintiffs further evinces that Defendant were aware of or consciously disregarded the fact that Plaintiffs did not consent to Defendants' use of the image to advertise Defendants businesses.

100. Defendants have caused irreparable harm to Plaintiffs, their reputation and brand by attributing to Plaintiffs the strip club lifestyle and activities at Riviera.

101.    Defendants' unauthorized use of Plaintiffs' image, likeness and/or identity directly and proximately caused and continue to cause damage to Plaintiffs in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
**(Violation of N.Y. Civ. Rights Law §§ 50-51)**

102.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

103.    As set forth herein, Defendants have violated N.Y. Civil Rights Law §§ 50-51 by invading Plaintiffs' privacy, misappropriating their likeness, and publishing on the Club's website or related social media accounts altered Images of Plaintiffs which made it appear as though Plaintiffs were employed at the Club, or endorsed the Club.

104.    At all relevant times, the Club's website and social media accounts were used and operated by Defendants for advertising and trade purposes.

105.    The Club's website and social media accounts were designed to attract business to the Club and generate revenue for Defendants.

106.    Upon information and belief, Defendants use of Plaintiffs' Images did in fact attract clientele and generate business for the Club.

107.    At no point did any Defendant ever receive permission or consent, be it written or otherwise, to use any Plaintiffs' Image on their website or social media account.

108.    Defendants were at all relevant times aware that they never received any Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote the Club.

109.    At no point did Defendants ever compensate Plaintiffs for its use of their Images.

110.    No applicable privilege or authorization exists for Defendants' use of Plaintiffs'

Images.

111.    Due to Defendants' violation of Plaintiffs' rights of privacy and publicity under sections 50 and 51 of the N.Y. Civil Rights Act, Plaintiffs has been damaged in an amount to be determined at trial, and are likewise entitled to exemplary and punitive damages.

112.    In addition, and pursuant to section 51 of the N.Y. Civil Rights Act, Plaintiffs hereby requests an Order permanently enjoining Defendants from violating Plaintiffs' right to privacy and publicity.

113.    In addition, and likewise pursuant to section 51 of the N.Y. Civil Rights Act, Plaintiffs hereby request an award of punitive damages, in an amount to be determined at trial, due to Defendants knowing and intentional violation of their statutory rights to privacy and publicity.

## FOURTH CAUSE OF ACTION
### (Violation of N.Y. General Business Law § 349:
### N.Y. Deceptive Trade Practices Act)

114.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

115.    Defendants operated the Club's website and social media accounts in order to promote the Club, to attract clientele thereto, and to thereby generate revenue for Defendants.  As such, Defendants' operation of the website and social media accounts, and their publication of Images thereon, was consumer-oriented in nature.

116.    Defendants published Plaintiffs' Images on the Club's website and social media accounts in order to create the false impression that Plaintiffs were either strippers working at the Club or endorsed the Club.

117.    As such, Defendants' intent in publishing Plaintiffs' Images was to mislead the public as to Plaintiffs' employment at and/or affiliation with the Club.

118.    As Defendants were at all times aware, Plaintiffs never worked at the Club, never endorsed the Club, and never had any affiliation with the Club.

119.    Defendants' publication of Plaintiffs' Images was done without any Plaintiffs' consent and was misleading in a material respect because it created the impression that Plaintiffs were strippers working at the Club, or endorsed the Club.

120.    As a result of Defendants' unauthorized and misleading publication of Plaintiffs' Images on their Club's website and social media accounts, each of the Plaintiffs' reputations was injured, and each of the Plaintiffs' ability to market herself as a model was injured.

121.    As a result of Defendants' unauthorized and misleading use of Plaintiffs' Images, Plaintiffs have suffered damages in an amount to be determined at trial, including punitive and exemplary damages.

### FIFTH CAUSE OF ACTION
**(Defamation)**

122.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

123.    As detailed throughout this Complaint, Defendants have published altered Images of Plaintiffs in order to promote their Club to the general public and potential clientele.

124.    Defendants' publication of said Images constitutes a representation that Plaintiffs was either employed by the Club, that they endorsed the Club, or that they had some affiliation with the Club.

125.    None of these representations were true.

126.    In publishing Plaintiffs' altered Images, it was Defendants' intention to create a false impression to the general public that Plaintiffs were strippers working at the Club, or endorsed the Club.

127.    Defendants were at least negligent in publishing Plaintiffs' Images because they knew, or should have known, that Plaintiffs were not employed by the Club, had no affiliation with the Club, had not consented to the use of their Images, and had not been compensated for the use of their Images.

128.    In the alternative, Defendants published the Images of Plaintiffs with actual malice because they knew that Plaintiffs were not employed by the Club, had no affiliation with the Club, had not consented to the use of their Images, and had not been compensated for the use of their Images.

129.    Despite Defendants' knowledge and awareness of these facts, they nevertheless made the decision to publish Plaintiffs' Images to attract clientele and generate revenue for themselves.

130.    Defendants' publication of Plaintiffs' Images constitutes defamation under New York law because said publication falsely accuses Plaintiff of having acted in a manner – *i.e.*, working as a stripper and/or endorsing a strip club - which would subject each Plaintiff to hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, and/or could induce an evil opinion of Plaintiffs in the minds of right-thinking persons, and/or could deprive each Plaintiff of confidence and friendly intercourse in society.

131.    Defendants' publication of Plaintiffs' Images likewise constitutes defamation *per se* under New York law because said publication would tend to injure each Plaintiff in her trade, business, and profession as a professional model.

132.    This is because any company or brand that sought to hire any of the Plaintiffs as a company or brand representative would be less likely to do so upon learning that she was a professional stripper and/or promoting as strip club, an inference which Defendants' publication

of the Images support.

133.    Defendants' publication of Plaintiffs' Images likewise constitutes defamation *per se* under New York law because, insofar as said publication falsely portrays each of the Plaintiffs as a stripper, it imputes unchastity to her.

134.    Defendants' publication of Plaintiffs' Image' caused Plaintiffs to suffer damages in an amount to be determined at trial, and are likewise entitled to punitive and exemplary damages.

## DEMAND FOR JURY TRIAL

135.    Plaintiffs demand trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request Judgment in their favor and against Defendants as follows:

(a)  For actual damages, in an amount to be determined at trial, relating to Plaintiffs' first through fourth causes of action;

(b)  For an order permanently enjoining Defendants from using Plaintiffs' Images to promote the Club;

(c)  For punitive damages, in an amount to be determined at trial;

(d)  For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action;

(e)  For such other and further relief as the Court may deem just and proper.

Dated: New York, New York
      December 14, 2018

                                        **THE CASAS LAW FIRM, P.C.**

                                        By: /s/ John V. Golaszewski
                                             John V. Golaszewski, Esq.
                                           1745 Broadway, 17th Floor
                                           New York, New York
                                           T: 855.267.4457
                                           F: 855.220.9626

                                        *Attorneys for Plaintiffs*

- 23 -